*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1367**

Janie "Jane" Astramecki, et al.,
Appellants,

vs.

Minnesota Department of Agriculture, et al.,
Respondents.

**Filed May 18, 2015
Reversed and remanded
Kirk, Judge**

Ramsey County District Court
File No. 62-CV-13-8018

Lee U. McGrath, Anthony B. Sanders, Institute for Justice, Minneapolis, Minnesota; and

Erica Smith (pro hac vice), Institute for Justice, Arlington, Virginia (for appellants)

Lori Swanson, Attorney General, Kimberly Middendorf, Jonathan Moler, Assistant Attorneys General, St. Paul, Minnesota (for respondents)

Nathan M. Hansen, North St. Paul, Minnesota; and

Judith I. McGeary (pro hac vice), Cameron, Texas (for amicus curiae Farm-to-Consumer Legal Defense Fund)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Kirk, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

Appellants challenge the dismissal of their claims challenging the constitutionality of a requirement in the Minnesota Consolidated Food Licensing Law, Minn. Stat. §§ 28A.01-.16 (2014), that food handlers be licensed if they sell outside of community events or farmers' markets or if they have more than $5,000 in gross receipts annually. Because we conclude that the district court dismissed the complaint before the record was adequately developed, we reverse and remand.

## FACTS

Minnesota regulates the production and sale of food under the Minnesota Consolidated Food Licensing Law, which provides that "[n]o person shall engage in the business of manufacturing, processing, selling, handling, or storing food without having first obtained from the commissioner a license for doing such business." Minn. Stat. § 28A.04, subd. 1(a). The statute classifies food handlers as (1) retail food handlers, "who sell or process and sell food directly to the ultimate consumer"; (2) wholesale food handlers, who sell food to others for resale; (3) wholesale food processors or manufacturers, "who process or manufacture raw materials and other food ingredients into food items, or who reprocess food items, or who package food for sale to others for resale"; and (4) food brokers, who buy and sell food and negotiate between buyers and sellers of food. Minn. Stat. § 28A.05. The statute sets forth the licensing fees that are required for each type of food handler depending on the amount of their gross sales. Minn. Stat. § 28A.08, subd. 3.

The statute provides several exceptions from the general requirement that all food handlers be licensed. Minn. Stat. § 28A.15. One such exception applies to "[a]n individual who prepares and sells food that is not potentially hazardous food . . . at a community event or farmers' market with gross receipts of $5,000 or less in a calendar year from the prepared food items." *Id.*, subd. 9. "Potentially hazardous food" is "food that is natural or synthetic and is in a form capable of supporting . . . the rapid and progressive growth of infectious or toxigenic microorganisms." Minn. R. 4626.0020, subp. 62 (2013). Another exception applies to "[a] person who receives less than $5,000 in gross receipts in a calendar year from the sale of home-processed and home-canned food products," if certain requirements are met. Minn. Stat. § 28A.15, subd. 10.

Appellant Janie "Jane" Astramecki is a homebaker and homecanner and the owner of appellant A Walk in the Clouds, Inc., which does business as Jane Dough Bakery. Astramecki sells her homemade baked goods, jams, and jellies at two farmers' markets. She operates her bakery from a custom-built kitchen in the basement of her home, which is separate from her family's kitchen. Appellant Mara Heck has a full-time job, but enjoys baking in her free time. Both Astramecki and Heck would like to expand their production of home-baked or home-canned goods and sell their products directly to customers outside of farmers' markets or community events. Neither Astramecki nor Heck have sought licensing under chapter 28A.

In November 2013, appellants filed a complaint against respondents Minnesota Department of Agriculture and Dave Frederickson, in his official capacity as the commissioner of the Minnesota Department of Agriculture (collectively, the state),

3

alleging that the sales-cap and venue restrictions that the state imposes on the sale of home-baked and home-canned goods violate the equal protection and due process clauses of the Minnesota Constitution.[1] Appellants requested a declaratory judgment, a preliminary and permanent injunction, and $1 in nominal damages.

The state moved to dismiss the complaint under Minn. R. Civ. P. 12.02(e), arguing that appellants failed to state a claim for which relief may be granted. The district court granted the state's motion and dismissed the complaint. This appeal follows.

## D E C I S I O N

A pleading "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought." Minn. R. Civ. P. 8.01. A party may move the district court for dismissal of the complaint if the pleader fails to state a claim upon which relief can be granted. Minn. R. Civ. P. 12.02(e). On appeal from the district court's decision to grant a party's motion to dismiss a complaint, appellate courts review the legal sufficiency of the claim de novo. *Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010). On review, this "court must consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003). We will dismiss a pleading "only if it appears to a certainty that no facts, which could be introduced consistent with the

---

[1] Appellants also named the Minnesota Department of Health and that department's commissioner in their complaint, but the parties later agreed to dismiss the claims against them with prejudice because the health department and its commissioner have no authority over the challenged law.

4

pleading, exist which would support granting the relief demanded." *Bahr*, 788 N.W.2d at 80 (quotation omitted); *see Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014) ("A claim is sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded.").

Appellants argue that the district court erred by concluding that their equal-protection claim failed. "The equal protection clauses of both the United States and Minnesota [C]onstitutions mandate that all similarly situated individuals shall be treated alike." *State v. Richmond*, 730 N.W.2d 62, 71 (Minn. App. 2007) (quotation omitted), *review denied* (Minn. June 19, 2007). Under both clauses, "only 'invidious discrimination' is deemed constitutionally offensive." *Scott v. Minneapolis Police Relief Ass'n*, 615 N.W.2d 66, 74 (Minn. 2000) (quotation omitted). An individual who challenges a statute based on a violation of equal protection must show that the statute classifies individuals based on a suspect trait, either in practice or on its face. *State v. Frazier*, 649 N.W.2d 828, 833-34 (Minn. 2002). The statute is presumed to be constitutional unless there is a fundamental right or suspect class at issue. *Richmond*, 730 N.W.2d at 71. Minnesota appellate courts apply rational-basis review if a fundamental right or suspect class is not involved. *Scott*, 615 N.W.2d at 74. Neither of the parties argues that a fundamental right or a suspect class is involved in this case. Thus, we apply rational-basis review.

As a threshold matter, we must determine whether the plaintiff is similarly situated to an individual who is treated differently under the challenged statute.[2] *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 656 (Minn. 2012). "The focus . . . in determining whether two groups are similarly situated is whether they are alike in all relevant respects." *State v. Cox*, 798 N.W.2d 517, 522 (Minn. 2011). Because the equal protection clause does not require the state to treat individuals who are differently situated the same, appellate courts routinely reject equal-protection claims when the individual cannot establish that he or she is similarly situated to individuals who he or she alleges are treated differently. *Odunlade v. City of Minneapolis*, 823 N.W.2d 638, 647 (Minn. 2012).

Appellants argue that the district court erred by concluding that the exceptions do not treat similarly situated individuals differently. They contend that the district court incorrectly compared "regulated/licensed commercial food handlers" to "unregulated/unlicensed home bakers and canners." Appellants argue that the correct comparison is instead between homebakers and homecanners who sell the same goods. Specifically, they argue that the two classes created by the venue exception consist of the following: (1) homebakers and homecanners who sell foods that are not potentially hazardous prepared in unlicensed home kitchens at a farmers' market or community

---

[2] We note that the supreme court recently determined that it was not necessary to decide whether or how to apply the similarly situated test in a case where it could decide the case by applying the rational-basis test. *In re Durand*, 859 N.W.2d 780, 784, 786 (Minn. 2015). But we do not apply that rationale here because of our ultimate conclusion that there are insufficient facts in the record to determine whether the challenged statutory exceptions satisfy the rational-basis test.

6

event; and (2) homebakers and homecanners who sell the same foods prepared in the same kitchens at any other venue. They further contend that there are two classes created by the sales-cap exception: (1) individuals who sell less than $5,000 of not potentially hazardous foods prepared in unlicensed home kitchens; and (2) individuals who sell more than $5,000 of the same foods prepared in the same kitchens.

We agree with appellants that the district court erred by comparing licensed food handlers with unlicensed food handlers. Instead, the correct comparison is between two groups of unlicensed food handlers: those who meet the sales-cap and venue restrictions and those who do not. *Cf. State v. Garcia*, 683 N.W.2d 294, 299 (Minn. 2004) (rejecting a comparison between juveniles and adults for equal-protection purposes because "[t]he relevant comparison is between juveniles designated as EJJs who violate probation and have an adult sentence executed, and juveniles certified as adults who are initially placed on probation and then violate that probation and have their sentence executed"). These two groups are similarly situated in all relevant respects. Because the statute treats similarly situated individuals differently, the threshold similarly situated test is met. Therefore, we next apply the rational-basis test.

The federal rational-basis test requires a reviewing court to determine "whether the challenged classification has a legitimate purpose and whether it was reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose." *Studor, Inc. v. State*, 781 N.W.2d 403, 408 (Minn. App. 2010) (quotations omitted), *review denied* (Minn. July 20, 2010). But Minnesota applies a stricter rational-

7

basis test. *Id.* (citing *State v. Russell*, 477 N.W.2d 886, 889 (Minn. 1991)). The three-part Minnesota test provides:

> (1) The distinctions which separate those included within the classification from those excluded must not be manifestly arbitrary or fanciful but must be genuine and substantial, thereby providing a natural and reasonable basis to justify legislation adapted to peculiar conditions and needs; (2) the classification must be genuine or relevant to the purpose of the law; that is there must be an evident connection between the distinctive needs peculiar to the class and the prescribed remedy; and (3) the purpose of the statute must be one that the state can legitimately attempt to achieve.

*Id.* (quotation omitted).

Appellants argue that the district court erred by dismissing their equal-protection claim at the rule-12 stage of the proceedings because they did not have the opportunity to develop the record. We agree. Minnesota appellate courts have consistently recognized that, unlike the more deferential federal rational-basis test, the Minnesota test does not allow courts to "hypothesize a rational basis to justify a classification." *Russell*, 477 N.W.2d at 889; *see Greene v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 729 (Minn. 2008). Instead, the Minnesota test requires "a reasonable connection between the *actual*, and not just the theoretical, effect of the challenged classification and the statutory goals." *Russell*, 477 N.W.2d at 889 (emphasis added). Because the Minnesota test requires a factual assessment of the connection between a statute's effect and its purpose, there must be a sufficient record before the court to allow it to make that assessment.

Here, the factual record is insufficient for us to determine whether the challenged statutory exceptions satisfy the Minnesota rational-basis test. We are particularly concerned with the lack of evidence in the record at this stage of the proceedings that shows how the venue and sales-cap restrictions are genuine or relevant to the purpose of the law. And we note that we have been unable to find any cases applying the Minnesota test at the rule-12 stage. *Cf. Scott*, 615 N.W.2d at 69, 74-76 (applying Minnesota test on appeal from district court's grant of summary judgment); *Healthstar Home Health, Inc. v. Jesson*, 827 N.W.2d 444, 448-53 (Minn. App. 2012) (same). Therefore, we conclude that the district court erred by dismissing the complaint before the record was adequately developed and remand to the district court for further proceedings consistent with this opinion.

**Reversed and remanded.**